*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBBIE DESHAWN TAYLOR,

Defendant-Appellant.

UNPUBLISHED
March 09, 2026
2:13 PM

No. 363131
Wayne Circuit Court
LC No. 15-005089-02-FC

Before: RIORDAN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

After a hung jury at his first trial, defendant was convicted, by a jury at his second trial, of first-degree premeditated murder, MCL 750.316(1)(a), and two counts of assault with intent to commit murder, MCL 750.83. The trial court sentenced defendant to life imprisonment without parole for his first-degree murder conviction, and 20 to 30 years in prison for each assault conviction.

This case is now before us on collateral review. After this Court denied defendant's initial application,[1] our Supreme Court ordered this Court to consider, as on leave granted,[2] defendant's appeal of the order denying his motion for relief from judgment. We affirm.

## I. BACKGROUND

This appeal arises out of a May 14, 2015 drive-by shooting that killed one person and wounded several others. The prosecution alleges that the drive-by shooting was in retaliation for a shooting in April 2015. In defendant's direct appeal, which was consolidated with the appeal of his codefendant and stepbrother, Edward Lee Watkins, this Court stated:

---

[1] *People v Taylor*, unpublished order of the Court of Appeals, entered February 28, 2023 (Docket No. 363131).

[2] *People v Taylor*, 513 Mich 997 (2024).

Defendants' convictions arise out of a drive-by shooting in Detroit on the evening of May 14, 2015, which wounded several people and killed one. The prosecutor's theory of the case was that (1) [defendant Taylor, codefendant Watkins] and an accomplice, Kenneth "Kya" Burnett, were members of a gang or rap group known as the "Turn-around Boys" or "Turn-around Gang," (2) they planned and committed the drive-by shooting as retaliation against Montez "Tez" Gantz and Terry Williams, who were members of a rival group, the "Forever Boys," (3) [Taylor and Watkins] did so because they believed that Gantz and Williams had shot Burnett and Taylor during a prior shooting, and (4) Taylor was the driver of the stolen minivan that was used in the drive-by shooting, while Watkins and Burnett were shooters. Gantz and Williams both were shot and wounded during the drive-by shooting, but a third victim, 22-year-old Paige Walker, was killed. [*People v Watkins*, unpublished per curiam opinion of the Court of Appeals, issued September 12, 2019 (Docket Nos. 340906 and 341307), p 2.]

The April 2015 shooting occurred when Burnett and defendant were followed as they drove from a studio, and two men shot at them, wounding both. Gantz and Williams denied involvement in that shooting, and neither defendant nor Burnett identified Gantz and Williams as the shooters. Later-obtained text messages between defendant and Watkins, however, reflected that Watkins said Burnett had "found one where stay" and defendant responded "I wanna see them fall myself."

Witnesses to the May 14, 2015 shooting described a white van driving by parked cars occupied by Williams and Walker; Gantz was standing nearby. The van slowed, the doors opened, and shots were fired. The van drove away, and its occupants shot at another vehicle, which had just driven away from the scene. Gantz and Williams were injured, and Walker was killed.

Gantz and Williams testified that they did not see who shot them. However, when Williams initially was interviewed by police, he implicated defendant, and later identified defendant as the van driver and Watkins as a shooter in photographic lineups. But at trial, Williams denied defendant and Watkins shot him, stating he had "made up a story." While at trial Williams denied being pressured to recant his initial identification of defendant and Watkins, he admitted that he sent text messages to a police sergeant before trial, expressing his reluctance to testify because of possible retaliation. He specifically stated that if defendant and Watkins went to jail, their friends would kill him, and added he "would rather be in jail than dead."

Defendant's first trial ended in a hung jury. After that trial, but before defendant's second trial, police apprehended Burnett, who was in possession of an AK-47 style rifle with a "drum-style" magazine loaded with more than 50 rounds. Ballistics testing later showed that the gun seized from Burnett discharged at least 41 of the shell casings recovered from the scene of the May 2015 drive-by shooting that killed Walker.

On the third day of defendant's second trial, a juror advised the trial court that some jurors were uncomfortable given the way certain court spectators were looking at them. The trial court assured the jurors it would ensure no intimidation occurred. Defendant moved to have that juror designated as an alternate or otherwise for a mistrial, but the trial court declined both. Another juror later reported that a courtroom spectator had approached him in the restroom and asked "if it was going up or down[.]" Although the encounter made the juror a little uncomfortable, the juror said it would not affect his judgment. The spectator, identified as defendant's friend, admitted he approached the juror, but did not

realize that was inappropriate. The trial court reminded the jury that such encounters should not occur, but if someone approached a juror, the juror should report it to the court deputies.

At the close of trial, during the final jury instructions, the trial court instructed the jury regarding the elements of the crimes charged. The trial court had not instructed the jury on the elements in the preliminary jury instructions. Defendant was convicted and sentenced as indicated above.

Defendant appealed, arguing that the trial court should not have admitted evidence of prior bad acts, specifically defendant's role in the "Turn-around Boys," and contending the prosecutor's interjection of the gang evidence amounted to prosecutorial misconduct. Defendant also moved for remand with affidavits from two new witnesses, Devin Hines and Terry Edwards. This Court denied the motion for remand, and did not specifically address the new affidavits. In its opinion, this Court rejected defendant's arguments regarding the admission of his gang involvement and prosecutorial misconduct. *Watkins*, unpub op at 11. Defendant applied for leave, which our Supreme Court denied. *People v Taylor*, 505 Mich 1028 (2020).

In November 2019, while his application in the Supreme Court on direct appeal was still pending, defendant, appearing *in propria persona*, moved for relief from judgment, raising 22 arguments. Defendant argued, in part, that trial counsel should have subpoenaed a witness at his second trial to provide alibi witness testimony. Additionally, he challenged the trial court's jurisdiction, argued that the jury had been intimidated, and maintained his counsel had been ineffective. Defendant also moved for an evidentiary hearing, and attached three affidavits, including the affidavit from Edwards, and new affidavits from Williams and Gantz. He did not attach the Hines affidavit.

Edwards was not an eyewitness to either shooting. Instead, he indicated that another man, not Williams or Gantz, shot defendant in April 2015. In his 2018 affidavit, Edwards indicated that a man named Jessie, an associate of "Big Mike," shot and robbed defendant on April 17, 2015. According to Edwards, defendant believed that Edwards or Burnett had set him up, but Edwards said Burnett and Big Mike had nothing to do with Jessie's actions against defendant. Edwards stated he told defendant's lawyer that "those guys who testified for the prosecution didn't shoot [defendant]" and the lawyer said the jury already was aware.

In his 2019 affidavit, Williams reasserted that defendant was not the driver of the minivan involved in the shooting. Williams said he was not honest when he identified defendant as the van driver during the May 2015 shooting. Williams also was not honest when he said Watkins shot him. He added that he "was under a high dosage of medication," which caused him "to blame two innocent people for shooting [him] and killing Paige [Walker]." Williams said he did not see the driver or the shooter.

In his 2019 affidavit, Gantz said that defendant was not the driver of the van during the shooting; the driver was a light-skinned, heavyset male with long braids. Gantz said he was afraid to say anything earlier because the men who shot them were still at large. Gantz said he came forward because he did not wish to see someone locked up for something that person did not do.

After reducing defendant's 22 issues to 10 main arguments, the trial court ruled, in relevant part, it had subject-matter jurisdiction because it was a court of general jurisdiction under statute, and because defendant had been properly bound over by the district court. Moreover, the trial court had personal jurisdiction over defendant as a Michigan resident who committed crimes. The trial court rejected

defendant's arguments regarding juror intimidation because any possible taint did not prejudice defendant—the court believed that, even without the intimidation, the jury still would have convicted defendant. Regarding the three affidavits, the trial court ruled that the evidence was not newly discovered and would not have made a different result probable on retrial, so the affidavits did not entitle defendant to relief. The trial court decided that appellate counsel was not ineffective because defendant had not shown prejudice from appellate counsel's decisions, and defendant was afforded a full appeal. Therefore, the trial court denied the motion for relief from judgment.

Defendant, appearing *in propria persona*, applied for leave to appeal in this Court and raised six issues, including: (1) lack of jurisdiction for noncompliance with MCL 766.15(1) and ineffective assistance of counsel for failing to challenge jurisdiction, (2) the trial court's failure to allow an alibi defense and ineffective assistance of counsel for failing to pursue it, (3) newly discovered evidence entitling him to a new trial, and (4) ineffective assistance of appellate counsel. This Court denied the application.[3]

Defendant appealed to our Supreme Court, in an application identical with the one he filed on direct appeal. In a handwritten note on the cover sheet of the application, defendant added that he adopted the application he previously filed in this Court. Defendant did not, however, include those issues in his statement of questions presented in his Supreme Court application, and made no argument regarding those issues. Defendant also moved for an evidentiary hearing, in part on the basis of affidavits from Edwards, Gantz, and Williams. Our Supreme Court denied defendant's motion for an evidentiary hearing and, as noted, remanded to this Court as on leave granted.

When our Supreme Court remanded as on leave granted, its order did not contain a limitation or direction regarding the issues to be addressed. Newly appointed appellate counsel chose not to address in the appellant's brief the six issues raised by defendant in his application, and instead raised three other issues. The prosecution addressed the three issues from counsel, but did not address the issues raised by defendant in his original application to this Court and then to our Supreme Court.[4] Because the issues defendant raised in his application may be decided without additional briefing, we chose not to order further briefing by counsel on those issues, but we caution both parties' counsel in the future to address all relevant issues raised when briefing a granted application for leave to appeal.

## II. LEGAL ANALYSIS

### A. RELIEF FROM JUDGMENT FRAMEWORK

This Court reviews a trial court's decision on a motion for relief from judgment for an abuse of discretion. *People v Spears*, 346 Mich App 494, 502; 13 NW3d 20 (2023). An abuse of discretion occurs when a trial court's decision falls "outside the range of principled outcomes." *People v Hoskins*, 342 Mich App 194, 200; 993 NW2d 48 (2022) (quotation marks and citation omitted). Factual findings supporting

---

[3] *People v Taylor*, unpublished order of the Court of Appeals, entered February 28, 2023 (Docket No. 363131).

[4] The prosecution did not file a response to the application in this Court, so the issues raised by defendant in his application were not addressed at that juncture.

the court's decision undergo review for clear error. *Spears*, 346 Mich App at 502. "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Byars*, 346 Mich App 554, 563; 13 NW3d 328 (2023) (quotation marks and citation omitted). A de novo standard of review applies to questions of constitutional law. *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022).

Under MCR 6.508(D), defendant has the burden of establishing entitlement to relief after his prior direct appeal. Regarding issues decided in his prior appeal, he must establish a retroactive change in the law, new evidence that would make a different result probable on retrial, or a significant possibility of actual innocence. MCR 6.508(D)(2). Also, he may not allege grounds for relief, other than jurisdictional defects, that he could have brought in his earlier appeal, unless he demonstrates that "good cause" existed for failure to raise the issue and that he has suffered "actual prejudice" from the irregularities. MCR 6.508(D)(3)(a) and (b). Alternately, he must show that his conviction should not be allowed to stand because of an irregularity that was so offensive to the judicial process.[5] MCR 6.508(D)(3)(b)(*iii*).

## B. JUROR INTIMIDATION

Defendant argues that the trial court should have further investigated the claims of juror intimidation or declared a mistrial. We disagree.

A defendant tried by jury has a right to a fair and impartial jury. *Duncan v Louisiana*, 391 US 145, 153; 88 S Ct 1444; 20 L Ed 2d 491 (1968); *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994). A jury verdict may not be rooted in extraneous factors or influences. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). To establish that a new trial is necessary, defendant must show: (1) " 'the jury was exposed to extraneous influences' "; and (2) " 'these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict.' " *People v Flores*, 346 Mich App 602, 610; 13 NW3d 668 (2023), quoting *Budzyn*, 456 Mich at 88-89. "Generally, in proving this second point, the defendant will demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Budzyn*, 456 Mich at 89.

A mistrial may be granted only where the requesting party establishes "that the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Beesley*, 337 Mich App 50, 54; 972 NW2d 294 (2021) (quotation marks and citation omitted). A trial court should not declare a mistrial regarding extraneous influence on a juror without determining that a mistrial is manifestly necessary. *People v Beck*, 510 Mich 1, 7-8, 11-16; 987 NW2d 1 (2022). We review for an abuse of discretion a trial court's decision regarding a mistrial. *Flores*, 346 Mich App at 608.

Even assuming exposure to extraneous influences here, defendant has not demonstrated actual prejudice, i.e., that a real and substantial possibility existed that the extraneous influences could have

---

[5] The brief filed by appointed counsel raises three issues, but does not reference the good cause or actual prejudice standards, nor does counsel discuss newly discovered evidence or a change in the law. See *People v Kent*, 194 Mich App 206, 210; 486 NW2d 110 (1992) (noting that the failure to adequately brief an allegation of error precludes appellate review). Notwithstanding, we exercise our discretion to review those three issues and conclude that they are meritless.

affected the jury's verdict. *Id*. at 610. The record reflects that the trial court immediately addressed the issue, assuring the jury that court security was very good and the jurors had no reason to be concerned. The trial court admitted that spectators "from one side or the other" sometimes will look at jurors, but the look could be done innocently or inadvertently, without an intent to intimidate. The trial court encouraged the jurors not to feel intimidated and, after the jury was dismissed, the court advised defendant and Watkins to encourage their supporters to stop looking at the jurors in any attempt to intimidate them. We also observe that, had the jury actually been intimidated, it likely would not have convicted defendant. Similarly, defendant has not shown that the juror's brief encounter with defendant's friend was an extraneous incident that affected the verdict. The trial court appropriately encouraged the jurors to report any further such incident to courtroom deputies.

Further, the trial court instructed the jurors that they should consider only the evidence and should not let sympathy or prejudice influence their decision. Courts presume jurors follow jury instructions, *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020), and presume jury instructions cure most errors, *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008).

## C. ADMISSION OF EVIDENCE

This argument centers on the testimony from Walker's mother, who testified for approximately six minutes on the second day of trial and shared her daughter's age at the time of her death and a personal detail about her daughter. We reject defendant's arguments that the testimony was irrelevant, not probative, and served no other purpose than to garner sympathy with the jury.

Unpreserved evidentiary issues are reviewed under the plain-error standard. *People v Lowrey*, 342 Mich App 99, 108; 993 NW2d 62 (2022). To satisfy the plain-error standard, "three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). In addition, the defendant must show that the error "intrinsically undermined the fairness, integrity, or public reputation of the proceedings." *Id*. at 109.

Relevant evidence, at the time of trial, was defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; *People v Campbell*, 236 Mich App 490, 503; 601 NW2d 114 (1999). Evidence is relevant provided the two components of materiality and probative value are present. *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998). Materiality requires that the proffered evidence be related to "any fact that is of consequence" to the action. *Id*.

In this case, where defendant was convicted of murdering Walker, facts that are of consequence to this case include Walker's presence at the scene at the time of the shooting and her death from a gunshot wound. It follows that evidence from her mother to identify Walker, including her age, was probative. In addition, the identification photographs of Walker were admissible to corroborate testimony. See *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995).

Even if relevant, evidence is not admissible if "its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Horton*, 341 Mich App 397, 404; 989 NW2d 885 (2022) (quotation marks and citation omitted).

Defendant has not shown how the jury would have given undue weight to the testimony at issue, and the testimony was not particularly prejudicial in any aspect. Further, it was a very small portion of the overall trial testimony, and defendant has not shown that the admission of that testimony reasonably could have affected the outcome of trial.

Defendant argues in the alternative that his trial counsel was ineffective for failing to object to the testimony regarding Walker. This Court will not substitute its judgment for that of trial counsel regarding matters of trial strategy, particularly in hindsight. *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019). Counsel may have had strategic reasons for failing to object, including not drawing attention to testimony from the victim's mother. Further, as indicated above, the trial court properly admitted the testimony at issue. Had counsel objected, the trial court likely would have overruled it. Counsel's failure to make a futile objection does not rise to the level of ineffective assistance. *People v Thurmond*, 348 Mich App 715, 741; 20 NW3d 311 (2023).

Finally, defendant has not shown that, but for the admission of the evidence, the outcome of the proceedings would have been different. See *Lowrey*, 342 Mich App at 108. In the absence of actual prejudice, he has not demonstrated that this point entitles him to relief from judgment.

## D. JURY INSTRUCTIONS

Defendant contends that the trial court committed structural error by neglecting to instruct the jury on the elements of the charged offenses during preliminary jury instructions or, in the alternative, that counsel was ineffective for failing to object. This issue fails.

A structural error occurs when the trial court completely fails to instruct a jury regarding the elements of a crime. *People v Duncan*, 462 Mich 47, 52-54; 610 NW2d 551 (2000). If the error is structural, reversal is automatic. *People v Anderson (After Remand)*, 446 Mich 392, 405; 521 NW2d 538 (1994). Otherwise, "an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *People v Kowalski*, 489 Mich 488, 501-502; 803 NW2d 200 (2011). In determining whether instructional error occurred, courts consider the instructions as a whole, rather than piecemeal. *Id*. at 502. Unpreserved non-structural instructional errors are reviewed for plain error affecting substantial rights. *Id*. at 505.

A criminal defendant is entitled to have a properly instructed jury consider the evidence. *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000). Jury instructions must set forth all elements of the crime with which a defendant is charged. *People v Ogilvie*, 341 Mich App 28, 34-35; 989 NW2d 250 (2022). The instructions "must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *Id*. (quotation marks and citation omitted).

Defendant complains that the trial court neglected to instruct the jury on any of the elements of first-degree premeditated murder, or assault with intent to murder, during the preliminary jury instructions. The court rule governing preliminary jury instructions provides:

> After the jury is sworn and before evidence is taken, the court shall orally provide the jury with pretrial instructions reasonably likely to assist in its consideration of the case. Such instructions, at a minimum, shall communicate the duties of the jury, trial procedure, and the law applicable to the case as are reasonably necessary to enable the jury to understand the proceedings and the evidence. *The jury also shall be orally instructed about*

*the elements of all civil claims or all charged offenses*, as well as the legal presumptions and burdens of proof. The court shall also provide each juror with a written copy of such instructions. . . . [MCR 2.513(A) (emphasis added).]

That rule supports the conclusion that a jury not properly informed of the law cannot fulfill its duty. See *People v Potter*, 5 Mich 1, 8-9 (1858) (ruling that the court erred in failing to clearly define the degrees of murder for the jury).

In the preliminary instructions, the trial court told the jury that defendant was charged with first-degree murder for the killing of Walker, and other individuals were nonfatal victims of the shooting. Further, the trial court stated that every crime is made up of elements, which the prosecution must prove beyond a reasonable doubt, and it would tell the jurors about the elements at the end of trial. The trial court added that it would give the jury "detailed instructions about the rules of law that apply to this case" after the evidence was presented. Trial counsel did not lodge any objection to the preliminary instructions.[6] In the final instructions, the trial court instructed the jury regarding the elements of the crimes, including aiding and abetting, first-degree murder, the lesser offense of second-degree murder, assault with intent to murder, and the lesser crime of assault with intent to do great bodily harm. At the end of the instructions, the trial court asked if any of the attorneys had objections to the charge as given. Again, trial counsel voiced no objection.

Accordingly, when viewed as a whole, the jury received instructions regarding the elements of charged crimes. The question becomes whether defendant is entitled to relief when the elements were not provided in the preliminary instructions.

In *Duncan*, 462 Mich 47, the trial court failed to instruct the jury regarding any of the elements of felony-firearm, and the jury convicted the defendant of two counts of first-degree murder and two counts of felony-firearm. *Duncan* concluded that the defendant was deprived of a "basic protection." *Id*. at 52. The jury, without the applicable law, was left to speculate. *Id*. at 53. The Court found, in part,

> that the failure to provide the jury with the definition of any of the elements of the crime charged is an error of much greater magnitude than presenting less than all elements and fits within the limited class of cases that are properly characterized as structural and therefore automatically reversible. [*Id*. at 54-55.]

Our Supreme Court in *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018), examined whether the trial court erred by giving written instructions to the jury with the elements of the charged offenses, but failing to read those instructions aloud. Defense counsel expressed satisfaction with both the preliminary and final jury instructions. *Id*. at 29-30. The *Traver* Court decided oral instructions were necessary under MCR 2.512 and MCR 2.513; written instructions would not suffice. *Id*. at 40. Even so, the Court ruled that a new trial was unwarranted because defense counsel had approved the jury

---

[6] To preserve a jury instruction issue, a party must object to the instructions, or request a particular jury instruction. MCL 768.29; *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000).

instructions on the record. *Id*. Given that approval, the defendant waived any objections to the instructions. *Id*. at 41.

In light of these two cases, we conclude that the jury was properly instructed on the elements of the crimes before beginning deliberations. The trial court's procedure did not amount to a complete failure to provide the elements of the crimes to the jury, as in *Duncan*. Rather, the jury was instructed on the elements of the charged crimes, but in a manner inconsistent with the applicable court rule, as in *Traver*. Defendant was not denied a basic protection, and when viewed as a whole, the jury instructions sufficiently protected defendant's rights. No structural error occurred.

Nor has defendant shown that counsel was ineffective for failing to object. Courts acknowledge a presumption that trial counsel's assistance was adequate and within reasonable professional judgment. *People v Abcumby-Blair*, 335 Mich App 210, 237; 966 NW2d 437 (2020). The burden for a defendant to prove counsel was ineffective is substantial. *People v Muniz*, 343 Mich App 437, 448; 997 NW2d 325 (2022). To establish ineffective assistance, "a defendant must show that (1) the lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for the lawyer's deficient performance, the result of the proceedings would have been different." *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted).

Defendant has not shown that counsel's failure to object to the preliminary jury instructions resulted in prejudice. The trial court instructed the jury on the requisite elements during the final jury instructions and provided the jury with written instructions containing all of the elements. Therefore, defendant has not demonstrated a "reasonable probability that, but for counsel's error, the result of the proceedings would have been different." See *id*. By the same reasoning, defendant has not shown that his substantial rights were affected, such that he is entitled to relief under the plain-error standard. See *Kowalski*, 489 Mich at 505.

E. JURISDICTION

Defendant next argues that the circuit court did not have jurisdiction to preside over his case. This argument has no merit.

Defendant specifically argues that the file was not certified to the circuit court in accordance with MCL 766.15(1). That statute provides, in relevant part: "Except as provided in subsection (2) or (3), all examinations and recognizances taken by a magistrate pursuant to this chapter shall be immediately certified and returned by the magistrate to the clerk of the court before which the party charged is bound to appear." Further, under MCR 6.110(G), "[i]mmediately on concluding the examination, the court must certify and transmit to the court before which the defendant is bound to appear the case file, any recognizances received, and a copy of the register of actions." The circuit court gains jurisdiction over a criminal defendant when the return is filed. *People v Johnson*, 427 Mich 98, 106 n 7; 398 NW2d 219 (1986). If a return is not filed, the circuit court does not acquire jurisdiction. *People v McGee*, 258 Mich App 683, 696; 672 NW2d 191 (2003). Return entries are not required to appear on the circuit court's register of actions. See *People v Wilson*, 8 Mich App 651, 662; 155 NW2d 210 (1967) ("The original authorization is not required to be passed on to the circuit court for inclusion in its records, and the fact that it is not present there is not prejudicial to appellant.")

The district court's and circuit court's registers of actions reflects that correct procedures were followed. A signed warrant was obtained on May 22, 2015, and defendant was arraigned by a district magistrate in May 2015. The district judge presided over the preliminary examination in June 2015, and defendant was bound over on the charges on June 16, 2015. A return was filed, and the case was transferred to the circuit court, where it proceeded to trial. Consequently, defendant's jurisdiction argument does not withstand scrutiny.[7]

Defendant references personal jurisdiction only in passing. This Court does not provide argument on behalf of appellants. *People v Bass*, 317 Mich App 241, 276; 893 NW2d 140 (2016). Even considering defendant's one-sentence argument, personal jurisdiction over a defendant attaches when the district court receives a sworn complaint and subsequently issues a warrant, *People v Mosley*, 338 Mich 559, 564; 61 NW2d 785 (1953), both of which occurred in this case. Consequently, the district court had personal jurisdiction over defendant. Moreover, as noted, after the preliminary examination and bindover, the circuit court had personal jurisdiction over defendant.

We additionally note that a party may waive any defect in personal jurisdiction by stipulating or implicitly consenting to the court's jurisdiction. *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011). Defendant has not previously argued a lack of personal jurisdiction over the years of court proceedings, including two trials. We conclude that defendant implicitly consented to personal jurisdiction as well.

Defendant also argues that appellate counsel was ineffective for failing to raise this issue in his direct appeal. But counsel is not ineffective by failing to make an argument that is meritless. *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021). Also, the failure by appellate counsel to "assert all arguable claims" or counsel's "decision to winnow out weaker arguments and focus on those more likely to prevail" does not amount to ineffective assistance. *People v Reed*, 449 Mich 375, 391; 535 NW2d 496 (1995) (opinion by BOYLE, J.).

## F. ALIBI WITNESS

Defendant argues that his alibi witness should have been subpoenaed for his second trial to prove he was not involved in the May 2015 shooting, trial counsel was ineffective in failing to call her, and appellate counsel should have raised the issue on appeal. This issue does not succeed.

Whether to call a witness is a matter of trial strategy. *People v Solloway*, 316 Mich App 174, 189; 891 NW2d 255 (2016). Claims of ineffective assistance on the basis of the failure to call an alibi witness require the defendant to demonstrate the witness would have provided favorable testimony. *People v Pickens*, 446 Mich 298, 327; 521 NW2d 797 (1994).

Defendant has the burden to show the factual basis for the claim. *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018). Defendant has not met his burden because he merely cites his trial counsel's opening statement in the second trial. Nevertheless, our review of the alibi witness's testimony from the first trial reflects that she testified that defendant, her boyfriend, was with her the entire evening

---

[7] To the extent that defendant suggests that the circuit court lacked subject-matter jurisdiction, we disagree because "circuit courts have subject-matter jurisdiction over felony cases." *People v Washington*, 508 Mich 107, 121-122; 972 NW2d 767 (2021).

of May 14, 2015. However, after the detailed cross-examination by the prosecution regarding the witness's lack of memory of other events around that time, trial counsel reasonably could have believed her testimony would not bolster the defense, particularly in light of the fact that police had arrested Burnett with a weapon used in the May 2015 shooting.

For this reason, we cannot conclude that trial counsel's decision not to call the alibi witness fell below an objective standard of reasonableness. Additionally, in light of the other evidence and the witness's apparent credibility concerns, it does not follow that a reasonable probability exists that a different outcome would have resulted had trial counsel called her to testify at the second trial. As a result, appellate counsel was not ineffective for choosing not to raise the alibi witness issue. As noted, appellate counsel may discard weak arguments to concentrate on arguments more likely to succeed. *Reed*, 449 Mich at 391.

## G. NEWLY DISCOVERED EVIDENCE

Defendant argues that he is entitled to a new trial on the basis of newly discovered evidence, the affidavits from witnesses who state that he was not one of the shooters or the driver of the van. However, the affidavits from Edwards, Gantz, and Williams do not constitute newly discovered evidence, and we decline to review defendant's attempt to expand the record with an additional affidavit from Devin Hines.

Defendant presented the affidavits of Edwards, Gantz, and Williams to the trial court as newly discovered evidence, and that court ruled, in relevant part:

> Upon review of the evidence, defendant meets in part the first prong of [*People v*] *Cress*[, 468 Mich 678; 664 NW2d 174 (2003)], that the evidence is "newly discovered." Witnesses Gantz and Williams were available during trial, which means their testimony is not newly discovered. However, the existence of witness Edwards at the time of trial is unknown. As such, defendant does meet, in part, *Cress*—the first element. Defendant also meets the second prong of the test, in that the evidence is not cumulative. However, defendant does not meet the third prong of *Cress*, that the evidence could not have been discovered at trial with reasonable diligence. As to witness Edwards, defendant was aware that witness Edwards existed and was in possession of possible exculpatory evidence. As such, defendant could have made a reasonable inquiry to locate and obtain this evidence at or before the time of trial. Lastly defendant failed to meet the fourth prong of *Cress* that the newly discovered evidence would result in a different result at retrial. There was significant testimony proffered against the defendant, by multiple witnesses, at trial, as well as other independent indicia and material evidence that was sufficient to prove the guilt of the defendant. As such, a different result would not be probable on retrial if this evidence were presented. Defendant's argument therefore fails as the evidence does not constitute newly discovered evidence which warrants relief.

To obtain a new trial on the basis of a claim of newly discovered evidence, "a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *Cress*, 468 Mich at 692 (quotation marks and citations omitted).

-11-

Gantz and Williams testified at trial, so their evidence was known to defendant and his counsel. Evidence is not considered newly discovered where defendant or his counsel knew of the evidence when trial occurred. *People v Rao*, 491 Mich 271, 281; 815 NW2d 105 (2012). Their evidence consequently does not meet the first prong of *Cress*.

Williams's affidavit also is cumulative. Williams expressly stated at trial he could not identify the shooter or the driver, and admitted he lied in identifying defendant as being involved. His 2019 affidavit merely echoes that testimony. Accordingly, the Williams affidavit does not meet the second *Cress* factor. We also note that the jury heard his testimony that defendant was not involved, yet the jury convicted defendant anyway.

At trial, Gantz denied that he could see the van driver or the passengers; in his 2019 affidavit, he stated defendant was not the driver of the van. To the extent this could even be considered a recantation, this Court typically is not swayed by witnesses' attempts to show they offered perjured testimony at trial by submitting a recanting affidavit. *People v Rogers*, 335 Mich App 172, 197; 966 NW2d 181 (2020). In any event, the slight variation in his testimony, when considered with the other evidence, would not make a different result probable on retrial. Given the above, the Gantz and Williams affidavits do not provide defendant grounds for relief.

Regarding the substance of Edwards's affidavit, defendant indicates he learned of it after trial. However, Edwards claimed he shared the information with defense counsel. Where counsel was aware of the evidence, it was not newly discovered. See *Rao*, 491 Mich at 281. Edwards's information would be mostly cumulative, as he echoed Gantz's and Williams's testimony that they did not shoot defendant in April 2015. Gantz and Williams already testified that they had no dispute with defendant, and did not shoot him. That portion of Edwards's affidavit does not survive the second *Cress* factor. Edwards also identified "Jessie" as the person who had robbed and shot defendant in April 2015, evidence that was not cumulative. As noted by the trial court, however, defendant was aware that Edwards existed and had possible exculpatory evidence. Defendant consequently has not demonstrated the third *Cress* factor, where he could have made a reasonable inquiry to obtain Edwards's evidence before trial. Where Edwards's affidavit does not meet the *Cress* factors, the trial court did not abuse its discretion in denying relief to defendant on that basis.

Finally, defendant cites Hines's affidavit, but defendant never provided it to the trial court, so defendant is attempting to expand the record on appeal. This Court may not consider evidence not presented to the trial court. See MCR 7.210(A)(1), which provides that the original record, to which our review is limited, consists of "the original documents filed in [the lower] court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced." A party may not expand the lower court record. *People v Morrison*, 328 Mich App 647, 655; 939 NW2d 728 (2019).

Further, the trial court, not this Court, determines the credibility of an affiant of newly discovered evidence. See *People v Johnson*, 502 Mich 541, 566-567; 918 NW2d 676 (2018) (ruling that a trial court first should determine whether newly discovered evidence is credible when deciding whether it would make a different result probable on retrial). We decline to consider Hines's affidavit absent a decision regarding credibility from the trial court. Defendant is free to file a successive motion for relief from judgment under MCR 6.502(G) for an initial credibility determination by the trial court.

Finally, defendant argues that appellate counsel was ineffective in relation to the newly discovered evidence. As noted, the affidavits of Gantz, Williams, and Edwards do not constitute newly discovered evidence. Further, the 2019 affidavits of Gantz and Williams were filed after defendant's direct appeal. Appellate counsel cannot be considered ineffective by failing to raise arguments regarding those affidavits. Regarding the Hines affidavit, counsel advised that he did not believe it would be helpful to defendant's case. Nevertheless, he submitted it to this Court with defendant's pro per motion for remand in defendant's direct appeal.[8] Appellate counsel's actions cannot be considered to be below an objective standard of reasonableness.

## III. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado

---

[8] This Court denied that motion. *People v Taylor*, unpublished order of the Court of Appeals, entered August 15, 2019 (Docket No. 341307).

-13-